```
                         UNITED STATES DISTRICT COURT
                          MIDDLE DISTRICT OF FLORIDA
                            JACKSONVILLE DIVISION



SHARON CLEMENTS,

           Plaintiff,

vs.                                    Case No. 3:08-cv-65-J-HTS[1]

MICHAEL ASTRUE,
Commissioner of
Social Security,

           Defendant.
_____


                            OPINION AND ORDER[2]

                               I.  Status
```

Sharon Clements is appealing the Social Security Administration's denial of her claim for Disability Insurance Benefits. Her alleged inability to work is presently[3] based on "major depression and a schizoaffective disorder." Memorandum in Support of Plaintiff's Appeal of the Commissioner's Decision (Doc. #10; Memorandum) at 4. Ms. Clements was ultimately found not

---

[1] The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge. Notice, Consent, and Order of Reference-Exercise of Jurisdiction by a United States Magistrate Judge (Doc. #9).

[2] Pursuant to § 205(a)(5) of the E-Government Act of 2002, this Order is available electronically. It is not otherwise intended for publication or to serve as precedent.

[3] Though previously she had been found disabled, it was determined such disability ceased in 2001. Eventually, Plaintiff amended her alleged onset date to January 11, 2003. Transcript of Administrative Proceedings at 325, 507. Accordingly, her claim was treated as if it were a new application. *Id*.

disabled by Administrative Law Judge (ALJ) Gerald F. Murray on November 7, 2006. Transcript of Administrative Proceedings (Tr.) at 325, 334. Claimant has exhausted the available administrative remedies and the case is properly before the Court.

On appeal, Plaintiff argues the judge "improperly disregarded the findings and opinions of [Satyen P. Madkaiker, M.D.], Ms. Clements's treating physician and [Peter Knox, M.Ed., Psy.D.], the examining physician and, instead, provided 'great weight' to the opinions of a non-examining physician." Memorandum at 15 (emphasis omitted); *see also id.* at 1. Additionally, she claims "[t]he ALJ erred by failing to include in his residual functional capacity finding [her] limitations in maintaining concentration, persistence or pace." *Id.* at 21 (emphasis omitted).

## II. Legal Standard

This Court reviews the Commissioner's final decision as to disability[4] pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Whereas no special deference is accorded the application of legal principles, findings of fact "are conclusive if supported by

---

[4] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. § 1382c(a)(3)(A). An ALJ must follow the five-step sequential inquiry described in 20 C.F.R. §§ 404.1520, 416.920, determining as appropriate whether the claimant 1) is currently employed; 2) has a severe impairment; 3) is disabled due to an impairment meeting or equaling one listed in the regulations; 4) can perform past work; and 5) retains the ability to perform any work in the national economy. *See also Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004).

substantial evidence[.]" *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (internal quotation marks omitted); *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (quoting *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998)). Substantial evidence has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Falge*, 150 F.3d at 1322 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see also Ingram*, 496 F.3d at 1260. Despite the existence of support in the record, the ALJ's determination may not be insulated from remand where there is a "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted[.]" *Ingram*, 496 F.3d at 1260 (internal quotation marks omitted); *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

### III. Discussion

**A. Treating Physician**

Ms. Clements takes issue with the judge "disregard[ing] Dr. Madkaiker's opinions in their entirety[.]" Memorandum at 15. She asserts "[t]he reasoning he offered contains numerous errors that require [his] decision . . . to be reversed." *Id*.

Unless rejected for good cause, a treating physician's opinion "is entitled to substantial weight[.]" *Ogranaja v. Comm'r of Soc.*

*Sec.*, 186 F. App'x 848, 850 (11th Cir. 2006) (per curiam) (quoting *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991)); *see also Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004). Further, the weight afforded a treating doctor's opinion must be specified along with "any reason for giving it no weight, and failure to do so is reversible error." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *see also Phillips*, 357 F.3d at 1241 ("When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate [his or her] reasons.").

"The treating physician's report may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory." *Edwards*, 937 F.2d at 583; *see also Ogranaja*, 186 F. App'x at 850; *Phillips*, 357 F.3d at 1240-41. ALJs, however, may not simply substitute their own judgment for that of a medical expert. *See Graham v. Bowen*, 786 F.2d 1113, 1115 (11th Cir. 1986) (per curiam). It has sometimes even been stated that, "[w]here the [Commissioner] has ignored or failed properly to refute a treating physician's testimony, . . . as a matter of law . . . he has accepted it as true." *MacGregor*, 786 F.2d at 1053.

The opinions Claimant alleges were erroneously rejected by the ALJ are, "[s]pecifically, . . . that as a result of her mental impairments [she] could not meet the demands of even simple, unskilled work on a regular and consistent basis[.]" Memorandum at 15; *see also id.* at 16 ("Dr. Madkaiker offered opinions . . .

regarding . . . the impact of [Ms. Clements's] impairments on her ability to perform work[.]").  However, a conclusion as to disability or ability to work is essentially legal rather than medical.  It "is not the type of 'medical opinion' to which the Commissioner gives controlling weight."  *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005); *see also Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) (per curiam) (determinations about disability or ability to work "are legal conclusions[,]" not medical opinions).  As "a physician is not qualified to make" judgments as to disability or ability to work as defined by law, *Norfleet v. Sullivan*, CIV. A. No. 89-5978, 1990 WL 29675, at *4 (E.D. Pa. Mar. 14, 1990); *see also Townsend v. Apfel*, 47 F. Supp. 2d 958, 964 (N.D. Ill. 1999), an ALJ would be unjustified in according special significance to legal determinations offered by doctors.  Thus, to the extent Ms. Clements suggests otherwise, the argument is rejected.

Plaintiff, however, also alludes to the rejection of Dr. Madkaiker's opinions "on the severity of her impairments and the limitations she would face when performing work-like activities."  Memorandum at 15; *see also id.* at 16-20.  The judge's reasons for rejecting these opinions will thus be reviewed, along with Claimant's challenges thereto.

In the Decision, concern was expressed that "[t]he treating physician apparently relied quite heavily . . . on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what [she] reported." Tr. at 331. This was especially troubling since the ALJ "question[ed] the reliability of [her] subjective complaints"[5] and "[t]he possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another." *Id*. He then pointed out "that patients can be quite insistent and demanding in seeking supportive notes or reports from their physicians, who might provide such a note in order to satisfy their patient's requests and avoid unnecessary doctor/patient tension." *Id.* While acknowledging "it is difficult to confirm the presence of such motives," the ALJ claimed "they are more likely in situations where the opinion in question departs substantially from the rest of the evidence of record, as in the current case." *Id.*

Ms. Clements understandably objects to the judge's statements in this regard, which basically amount to unjustified speculation. If contrary evidence in the record was considered more persuasive, then such should have been identified and discussed. Instead of demonstrating a departure "from the rest of the evidence of

---

[5] Particularly, he mentioned her testimony of visual hallucinations, when the "record only contain[ed] reports of auditory hallucinations." *Id*. at 332. Yet, upon reviewing the transcript, there does appear to be at least one prior complaint of visual hallucinations. *See id*. at 411 ("'I see things.'").

record," *id.*, however, the judge focused primarily on the opinion of a nonexamining expert. *See id.* at 331-32. That the opinions of doctors differ from each other is not, by itself, a sufficient reason for inferring untruthful motives on the part of a physician.

Next, the ALJ deemed many of the physician's opinions "highly conclusory, providing little or no explanation of the evidence relied upon in forming them." *Id.; see also* Memorandum at 19. It was also explained that the "treatment notes do not even support his assertions of disability, inasmuch as Dr. Madkaiker apparently never issued any specific work-related restrictions[.]" Tr. at 331; *see also* Memorandum at 20. As to the judge's finding that many of Dr. Madkaiker's opinions were unsupported and conclusory, Ms. Clements insists the doctor's decision to use questionnaires should not provide the "requisite 'good cause' . . . to completely disregard [his] opinions." Memorandum at 20. She points out "[o]btaining opinion evidence via Questionnaires . . . is common in disability claims [and] the opinions offered by Dr. Madkaiker are not conclusory and are supported by his own treatment notes and evidence from Dr. Knox." *Id.* at 19-20.[6]

The Court understands the judge's statement that "Dr. Madkaiker apparently never issued any specific work-related restrictions[,]" Tr. at 331, to mean the physician did not of his

---

[6] Plaintiff does not specify in this portion of her brief what opinions or findings from Dr. Knox she means to reference. To the extent she is alluding to his diagnosis of depression and opinion as to whether she would be a good employee, *see id.* at 15; Tr. at 218-19, these matters are addressed *infra*.

own accord place restrictions on the work-related demands Plaintiff could meet.  Where an individual is not employed or known to be seeking work, it might seem pointless to offer such opinions.  Accordingly, Claimant validly observes that it is not "clear that before [being] contacted by [her] attorney, [the doctor] was ever asked to comment on her work-related restrictions."  Memorandum at 20.  Under the circumstances, whether unsolicited opinions about work-related abilities were provided by the doctor should not have been deemed a weighty reason for rejecting his evaluations.[7]

Additionally, the Court concludes the ALJ erred in determining the treating physician's opinions were "highly conclusory, [with] little or no explanation of the evidence relied upon in forming them."  Tr. at 331.  In the assessment[8] completed January 26, 2004, when prompted to "identify the medical/clinical findings that support" his appraisal of certain mental abilities, the doctor explained Plaintiff "[c]an get distracted from command [h]allucinations[.]" *Id*. at 297; *see also id*. at 392 (indicating hallucinations as a symptom).  This explanation is supported by Dr. Madkaiker's treatment notes.  While the reports of hallucinations fluctuated throughout the treatment period, and as of July 2006,

---

[7]  At any rate, when asked, Dr. Madkaiker did identify specific work-related restrictions.  *See* Tr. at 295-98, 393-94.

[8]  That the forms completed by the doctor elicited "a series of checkmarks," *id*. at 331, is not itself of much significance and seems to have been mentioned in passing by the judge, whose focus was on the alleged lack of supporting explanation and evidence.

had "been controlled with . . . a fairly high dose of . . . medication," *id*. at 488, the problem had evidently persisted for more than a 12-month period and the doctor represented she "continues to have moderately severe symptoms of depression and . . . remains impaired." *Id*. at 488-89.

The treatment notes reveal other corroborative observations as well. For example, Dr. Madkaiker's ongoing evaluation of Claimant's judgment and insight indicates he perceived significant deterioration. In March and April 2004, judgment was assessed as good, while insight was considered intact. *See id.* at 422-23. Thereafter, the two abilities were only noted as fair. *See id.* at 410-12, 414-21. This appears generally consistent with the physician's opinions relating to the capacity to perform various work-related tasks. *See id.* at 296-97. Further, on the Mental Residual Functional Capacity Questionnaire, Dr. Madkaiker noted "signs and symptoms" have included mood disturbance and bipolar syndrome. *See id.* at 392-93. These findings seemingly correspond to various treatment notes. *See, e.g., id.* at 410 (mood dysthymic), 411 ("[f]eels like giving up"), 414 (mood euthymic), 416 (mood depressed), 417-19 (mood euthymic), 420 (mood depressed), 421 (mood dysthymic, hears voices telling her to "'go ahead [and] hurt [her]self'"), 422 (mood depressed). Moreover, the physician wrote a letter in July 2006 describing the course of Plaintiff's treatment, her symptoms, and diagnoses. *See id.* at 488-89.

Although it may have been beneficial for the doctor to have provided even more information, this does not appear to be a situation where his opinions are so wholly unsupported they should be completely disregarded.

Pointing to a large discrepancy in Global Assessment of Functioning (GAF) scores assigned by Dr. Madkaiker, the judge declared his perception of "a tendency to overstate [Ms. Clements's] functional limitations." *Id.* at 331; *see also id.* at 330 (characterizing the GAF variance as "indicat[ing] he was outlandishly exaggerating the . . . mental impairments"). Claimant, on the other hand, asserts the physician's opinions "were consistent with each other and offered over a two year treatment history[,]" and therefore, the GAF discrepancy was most likely a typographical error, not supportive of "a tendency to overstate [her] functional limitations." Memorandum at 20. Indeed, it does appear the lowest GAF assigned was probably the result of a scrivener's error. In his report on July 30, 2003, the doctor explained "that [the patient] had been feeling much better since her discharge from the hospital." Tr. at 290. "She stated that her auditory hallucinations had markedly decreased[, and h]er depressive symptoms decreased to a great extent." *Id*. The report reflects a "G.A.F. at the time of evaluation[ of] 25." *Id.* at 291. Yet in a discharge summary from ten days prior, Dr. Madkaiker had noted that, early on in her stay at the hospital, Plaintiff "was

extremely depressed and her auditory hallucinations were present almost throughout the day." *Id.* at 299. Her GAF on admission was assessed as 30-35, whereas on discharge it was considered to be 55. *See id.* at 300. It is therefore improbable the score of 25 at issue reflects anything but a clerical error. Even if it was not a typo, the Court is unconvinced this single finding could legitimately be characterized as "a *tendency* to overstate the claimant's functional limitations." *Id.* at 331 (emphasis added).

Despite the reasons offered for rejecting the doctor's opinions, the ALJ stated he "might well have given Dr. Madkaiker the benefit of the doubt, absent strong contradictory opinion evidence from a well-qualified mental health expert." *Id.* According to Plaintiff, the judge should not have relied upon the referenced nonexamining expert, Dr. Neil Lewis, "[w]hen faced with contrary evidence from both a treating and examining physician[.]" Memorandum at 17. Indeed, "[t]he opinions of nonexamining, reviewing physicians . . . when contrary to those of examining physicians are entitled to little weight in a disability case, and standing alone do not constitute substantial evidence." *Hoffman v. Astrue*, 259 F. App'x 213, 217 (11th Cir. 2007) (per curiam) (second alteration in original; internal quotation marks omitted). As this case must be remanded with instructions to re-evaluate the weight afforded to Dr. Madkaiker's assessments, the judge will also be

asked to ensure that nonexamining doctors' opinions are viewed in the appropriate light.

   B.   **Examining Physician**

   Plaintiff also contends the judge "improperly disregarded the findings and opinions of . . . Dr. Knox, the examining physician[.]"  Memorandum at 1 (emphasis omitted).  She observes Dr. Knox "diagnosed her with severe depression[ and] noted that due to this depression she would not be a good employee[.]"  *Id.* at 15 (internal quotation marks omitted).  The ALJ described multiple reasons for not accepting the opinion "that the claimant would not be a good employee[.]"  Tr. at 332; *see id.* at 219.  Since the doctor's phrase neither expresses particular functional limitations nor constitutes a medical opinion, the judge will not be faulted with regard thereto.  *Cf.* discussion, *supra*, at 4-5.  As for Dr. Knox's diagnosis of depression, it is noted a "mere diagnosis . . . says nothing about the severity of the condition."  *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (per curiam); *see also Scull v. Apfel*, 221 F.3d 1352, No. 99-7106, 2000 WL 1028250, at *1 (10th Cir. July 26, 2000) (Table) ("[D]isability determinations turn on the functional consequences, not the causes, of a claimant's condition[.]").  In fact, when assessing functional limitations, Dr. Knox opined there was "[n]o significant impairment" of work-related mental activities.  Tr. at 219.  He

also stated Claimant's "memory appeared intact," and there were "[n]o significant issues" with concentration or persistence. *Id.*

### C. Residual Functional Capacity (RFC)/Hypothetical

Plaintiff argues the judge failed to properly account for her mental limitations in his RFC finding and vocational hypothetical. She claims the ALJ failed to incorporate "limitations in the ability to maintain concentration, persistence or pace." Memorandum at 23; *see also id.* at 17, 24 (noting Dr. Lewis's opinion as to these limitations, which the judge allegedly did not correctly include in his RFC determination).

The judge found "that the claimant has moderate restrictions in her activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence or pace." Tr. at 327. However, in both his RFC assessment and hypothetical posed to the vocational expert, the ALJ accounted for Plaintiff's mental restrictions only by stating she was "limited to positions that require no more than occasional contact with the public." *Id.* at 328 (emphasis omitted), *see also id*. at 525. It is not clear this limitation was sufficient to encompass the impairments recognized by the ALJ. *Cf., e.g., Wiederholt v. Barnhart*, 121 F. App'x 833, 839 (10th Cir. 2005) (limitation to simple, unskilled tasks not sufficient to incorporate impairments such as moderate difficulties with maintaining concentration, persistence, or pace); *Leighton v.*

*Astrue*, No. 07-142-B-W, 2008 WL 2593789, at *4 (D. Me. June 30, 2008) (report and recommendation of magistrate judge subsequently accepted by district court) ("limitations on contact with the public, routine supervision, interaction with coworkers, and work changes and pace" inadequate to account for "moderate difficulties in maintaining social functioning and concentration, persistence or pace"); *Davis v. Astrue*, Civil Action No. 06-3550, 2007 WL 2248830, at *4 (E.D. Penn. July 30, 2007) (requiring deficiencies in concentration, persistence or pace to be specified in the hypothetical). On remand, the Commissioner should develop an RFC finding reflective of all Ms. Clements's impairments and pose a hypothetical setting forth the same.

## IV. Conclusion

In accordance with the foregoing, the Clerk of the Court is directed to enter a judgment pursuant to sentence four of 42 U.S.C. § 405(g) **REVERSING** the Commissioner's decision with instructions to 1) reevaluate the evidence from Dr. Madkaiker; 2) develop an RFC finding reflective of all Claimant's impairments and, if a vocational expert is again utilized, pose a hypothetical setting forth the same; 3) ensure that Dr. Lewis's opinions are viewed in the appropriate light; and 4) conduct any further proceedings deemed appropriate. If benefits are ultimately awarded, Plaintiff's counsel shall have thirty (30) days from receiving

notice of the amount of past-due benefits to seek the Court's approval of attorney's fees under the Social Security Act.

**DONE AND ORDERED** at Jacksonville, Florida, this 3rd day of February, 2009.

/s/    Howard T. Snyder
HOWARD T. SNYDER
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of record
    and pro se parties, if any